Okay, you may proceed. Thank you, Your Honors. Good morning, and may it please the Court. My name is Caroline Platt from the Office of the Federal Public Defender on behalf of Eleanor Serrano Zuniga. To pick up where you and my colleague left off, if Lopez Chavez was overruled at all, it was as to D-1, exhaustion of administrative remedies, and my client appealed to the BIA with his ineffective counsel. That is satisfaction of D-1. So I agree with my colleague that Lopez Chavez and whether or not it's overruled as to D-2 or D-3, there's no question about that. As Judge Huerga said, excuse me, Palomar Santiago only said you have to satisfy all three, and D-1 was the one that this Court was sometimes excusing. But here, my client appealed to the BIA, so D-1 is not at issue. D-2, as you all were just discussing, is the improper deprivation of the opportunity for judicial review. Our position is not that that is always satisfied in an IAC case or that it is never satisfied in an IAC case. Our position is that in each case, the client defendant noncitizen has to show that he was improperly deprived of the opportunity for judicial review, the language of the statute. And in my case, in our case, the ineffective assistance of counsel is the way that the deportation proceeding is improperly depriving him of judicial review. In our case, it's because the inefficient, excuse me, I'm under the weather, the ineffective counsel is the person who did the BIA appeal and did not raise their own ineffectiveness, which, as the Court is surely aware, is very common as well in the criminal as well as immigration context. Lawyers almost never raise their own ineffectiveness, and if they do, they're conflicted and they need to conflict out. Kagan. Counsel, let me ask you this. Is the IAC here a substantive defect or a procedural one, and does it matter? I'm not sure it matters in this case, Your Honor, and here's why. I think that IAC is a procedural defect that can lead to a substantive defect. And so in this case, it's a good example of that. It's different in terms of the remedies because my client was seeking cancellation of removal with his ineffective counsel, which he is not eligible for and was never eligible for. And the same is true of post-conclusion voluntary departure, which is a separate relief from pre-conclusion voluntary departure. They're statutorily separate. And they have different histories as the ---- Counsel, will you slow down a little bit? I'm sorry, Your Honor. Yes. It would be helpful to process what you're saying. Yes, I apologize. So in this case, the fact that he was statutorily ineligible for the two reliefs that his immigration counsel requested, the IJ was correct to deny those reliefs. So it's a substantive error because the IAC is shielded because it has not been raised. And so it looks ---- But you're saying the counsel was deficient because he did not pursue pre-conclusion voluntary departure. And that's the prejudice. Correct, Your Honor. By failing to pursue the only relief to which your client is eligible, he was prejudiced. Yes, Your Honor. And here, my client was eligible for pre-conclusion voluntary departure. It was not sought. And so it was not when the IJ balances the equities, he said, the IJ said, you're not eligible for this. So any talk of the equities was basically dicta. So therefore, when we get to the deprived of judicial proceedings, he was because he didn't exhaust that relief. Exactly. And so even on a PFR, as the Court surely knows, from the BIA appeal, even if a lawyer had pursued a PFR for judicial review, because it was not exhausted, there's not jurisdiction in the immigration context over unexhausted claims. And so the lack of a PFR here isn't actually relevant because PFR or no PFR, he was deprived of the opportunity for judicial review of the ineffective assistance. Of the pre-conclusion, the failure to raise. Exactly. The only relief for which he was eligible, which is pre-conclusion voluntary departure. In fact, today, because the district court didn't reach D3, today is the first time any Article III judge has ever talked about the ineffective assistance of clients. This is the first judicial review because he was improperly deprived of it prior. As to prejudice, Your Honors, as the Court is also aware, there's a string of cases that our office and the U.S. Attorney's office goes back and forth with voluntary departure, pre-conclusion, and whose record is worse, and what are the equities. In this case, we have something unusual, which we focused on, which is that the immigration judge granted Mr. Zuniga an immigration bond like six months before the removal order, which is discretionary relief that the IJ can choose to grant or not grant, and they did. So the IJ was disposed to favorable views of the equities of Mr. Zuniga's case, and we know that because there was an immigration bond issued in 2003. In fact, that was the last thing that happened with the counsel who was not the ineffective counsel. My client had two immigration lawyers, and after the bond, the new lawyer came in and started pursuing claims that were not viable, which was the IAC. So here we have shown prejudice because we have shown discretionary relief given to my client in the immigration process. There's no reason to think that pre-conclusion voluntary departure would not have had the same outcome had it been presented by an effective immigration lawyer. So here we have shown the deprivation of judicial review, we have shown ineffective assistance of counsel, and we have shown prejudice. What's the third prong? D3 is that the removal proceedings of the order were fundamentally unfair, which goes to one, it would be our IAC claim is the unfairness and the prejudice, as we said, is shown by the immigration judge's grant of bond, which is a different form of discretionary relief to my client, Mr. Zuniga. On D1, isn't there a difference between administrative, the exhaustion of administrative, administrative exhaustion is different from issue exhaustion? Yes. And so? So we, our position is, and we believe it's right, I've briefed it in my reply brief. Exhaustion of administrative remedies, which is the language of D1, is remedy exhaustion. So in the 1326 D1 sense, you can, you can exhaust by filing an appeal to the BIA, regardless of what issues are raised. This is distinct from the immigration context, where your BIA appeal and your PFR, there is issue exhaustion in 1252 written into the statute, which is, I think, but here, and I'd like to note, I found over the weekend, I was looking for what other circuits do, they contend that we have to file a motion to reopen before we can raise IAC, even when we have appealed to BIA. That is what sets this case apart from Palomar-Santiago, from Portillo-Gonzalez. We appealed to the BIA. That satisfies D1, period. The Second Circuit in United States v. Copeland, 2004 case, I'd be happy to give citations, Your Honor, and also even the Fifth Circuit, Your Honor, say that you can satisfy D1 for exhaustion either by appealing to the BIA or by filing a motion to reopen. There is no circuit that I'm aware of that holds that you have to do both in order to exhaust. So, in my view, the government's argument as to D1 in this case is simply wrong. So, as I said, we have satisfied D1, we have satisfied D2, and we believe we've shown both prongs of D3. If the Court doesn't have further questions, I'm happy to save my time for rebuttal. Okay, please do. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. A.S.A. Nicholas Purcell on behalf of the United States. There's no dispute here that defendant has to satisfy all three of D1, D2, and D3 in order to prevail here, any one of which a failure to satisfy would doom the relief that defendant seeks. Unless the Court directs me otherwise, I'd like to start with D2 because I know that that was the focus of my colleagues. That's the issue in this case is whether he satisfied D2, right? I don't agree. I think D1 is very clearly at issue here. I think the case law that's cited in the government's answering brief, including Tejeda Mahada, Rashabadi, and Hinojosa-Perez, all hold that a motion to reopen, when an issue is not raised with the BIA, a motion to reopen is necessary to put that issue before the BIA. Otherwise, there's a failure to exhaust administrative remedies here. And that's important because defendant is now using that failure to exhaust as a reason to argue that there was no judicial review available. The defendant can't have it both ways. It's using issue exhaustion as both a sword and a shield. If they couldn't have raised the issue on a direct petition for review before this court in the underlying proceedings, it makes little sense to now argue that they can raise that issue before this court. And so I think D1 is very much at issue here. A motion to reopen was available. Defendant failed to seek that motion to reopen and therefore failed to exhaust administrative remedies. So I do think D1 is very much at issue. D2, I agree, is also at issue here. As defendant argued, they appealed to the BIA and therefore generally an appeal to this court, or a petition for review to this court, was available. So the only argument is that whether the IAC claim was not available to be raised. Again, it could have been raised if a motion to reopen was sought. But, and I think the Rashabadi case is directly on point here. The petitioner in that case failed to raise an issue before the BIA and then petitioned this court on that issue. And Rashabadi found that the petitioner had failed to exhaust administrative remedies because they had not sought to reopen the case with the BIA. I think that the same, the exact same thing is true here. The defendant failed to reopen the case. The BIA therefore never had an opportunity to rule on the IAC. And therefore, the defendant did not exhaust administrative remedies. And if they had sought to reopen the case, then it could have then appealed a denial if the BIA had denied it as untimely or for any other reason. Defendant could have then appealed that BIA order to this court. And therefore, defendant both failed to exhaust administrative remedies and judicial review of that underlying proceedings was available to this court. Defendant failed to take that opportunity. I think that's what distinguishes this case from others in which the defendant did appeal and so certainly there was an opportunity for judicial review. But failing to take the opportunity to seek judicial review is not the same thing as not having the opportunity. And D-2 is very clear that it's about the opportunity to seek judicial review, not whether that review was actually sought. And so I think under that, under those published cases which are precedential here, neither D-1 nor D-2. Can I just give you the whole? Sure. Tejeda Mata, all of which are cited in the government's brief, but Tejeda Mata, a separate appeal was filed with the BIA and then the petitioner sought review in this court on a different issue. And this court held that because the issue had not been raised with the BIA, that review here was foreclosed. Rashtabadi is, again, another one in which a separate issue was appealed to the BIA. So it's just simply not true that any appeal to the BIA can exhaust administrative remedies. It has to be the issue itself that's now before this court that has to be appealed. And then Hinojosa-Perez is a 1326 case. It was a due process case. It wasn't IAC, but it was a due process notice issue. The defendant failed to raise the due process argument with the BIA and then sought to raise that issue before this court in a 1326 collateral attack. This court in Hinojosa-Perez found that the defendant had both failed to exhaust administrative remedies and had failed to demonstrate a lack of judicial review. Because a motion to reopen had been available, the defendant did not seek to reopen and did not, therefore, seek an appeal of that theoretical denial of the motion to reopen. And so those three cases, I think, are conclusive here that defendant cannot satisfy D1 and D2. Did he truly have an opportunity to seek judicial review if he didn't know that a remedy was available to him that was not argued for and his lawyer was the one who failed to bring that up? Yes, excuse me, for two reasons. I'd say, one, there's nothing in the record that shows that he did not know that. There's no declaration from either defendant or from previous counsel that he was unaware of that. So I don't think the record supports that he was unaware. But even if he was, again, whenever he did become aware of it, which clearly at some point he did become aware, a motion to reopen was available then. If he had sought the motion to reopen whenever he became available, that would have exhausted administrative remedies. And then he could have appealed that whether the BIA approved it or denied it, presumably it would have been a denial. But if the BIA denied it, then judicial review of that denial would unquestionably have been available in this court. So exhaustion requires appealing to the BIA and then reopening, moving to reopen to the BIA. Is that every time? Not every time, only if you haven't raised the issue with the BIA. If you've raised the issue that you now seek to bring before this court, then I would agree that a motion to reopen or a motion to reconsider is not required. That's a remedy that's not required here. But if you failed to raise the issue with the BIA and then want to raise it before this court, then yes, I think the cases that I've cited are clear that a motion to reopen is required to exhaust administrative remedies. I think those cases are directly on point. Without reopening, there's a failure to exhaust administrative remedies. I'd also like to briefly address, I think, one issue in the reply brief that the government did not have a chance to address, which is this time bar or departure bar preventing a motion to reopen. That's simply not consistent with this court's law. I think Itter-Berea v. INS, which is 321 F.3.889, deals with a motion to reopen specifically in the IAC context and finds that there's equitable tolling of a time bar in the case of an IAC. And so to go to your Honor's point, if he couldn't have known, and even with diligence, his lawyer was ineffective, but there's no way he could have known that, there would be equitable tolling of that time bar. And whenever he did become aware of it or should have become aware of it, he then could have raised that IAC in a motion to reopen. So I don't believe it's correct on the law to say that a motion to reopen was not available because of the time bar or departure bar. So are you saying that in 2021, when he was charged with illegal reentry, the first thing he should have done is move to reopen his proceedings at the BIA because of tolling? If that is when he first became aware of it, there's nothing in the record of when he became aware of counsel's ineffective assistance and that pre-conclusion voluntary departure would have been the way to go. But if that is when he became aware of it, then that's what he should have sought to do. And even if the BIA denied it, then a petition for review to this court would have been available. And just to briefly touch on the D3 element, I don't think either prong of D3 has been satisfied here. One, I don't believe the record supports that counsel was deficient here. He made a strategic decision to attack those underlying convictions. There's a letter from a criminal lawyer in the motion to dismiss that says he believes there was valid grounds to attack the first conviction. He simply, the defendant, didn't have the money to retain that lawyer. But there's nothing in the record to say that it was impossible for the defendant to attack those underlying convictions. And if he had been successful in attacking them, then there would have been, he would have had remedies available. So making a strategic decision that ultimately didn't work out cannot possibly rise to the level of a fundamentally unfair proceeding, especially when the equities that would have been at issue were fully raised before the IJ. The equities were discussed. The record reflects that. They discussed his family history, his history in this country. They obviously discussed his convictions. So the equities were before the IJ. There's no prejudice there because the IJ had all of that information in front of him. There's also nothing in the record to say that the IJ couldn't have granted pre-conclusion voluntary removal. I believe the opening brief simply states that it should have been foreseeable that the judge, that the immigration judge would have decided on post-conclusion grounds. But there's nothing in the record to suggest that it was impossible for the IJ to grant pre-conclusion voluntary departure. So if the equities raised – Can I ask you a question? Sure. Did you raise this motion to reopen issue before the district court? I believe before the district court there was an argument that D-1 wasn't satisfied. He says, as presented to the court, resolution of Mr. – I mean, that's why I had the impression that this whole case turned on D-2. Resolution of Mr. Zuniga's motion to dismiss turns on the second prong of this standard, that he was deprived of judicial review. I agree. I think that – In the court's opinion, it doesn't sound like D-1 was raised. D-1 was certainly raised. I think that the government's brief clearly said that none of the three prongs were satisfied. It never conceded that D-1 was satisfied here. I agree that the district court found that D-1 was satisfied. But, of course, this court can affirm on any ground supported by the record. And so because the government challenged the satisfaction of D-1 below, it can be more fully fleshed out here with the discussion of a motion to reopen. And unless there's any more questions. Questions? No. The government seeks affirmance of the district court's grant of the motion to dismiss or the denial of the motion to dismiss. Thank you. Okay. Just one other point. He says, regarding the first prong, the government does not meaningfully argue that Mr. Zuniga failed to exhaust his administrative remedies. That's what the district court says about the argument. Correct. I would disagree. I'm just questioning you further on this because I haven't heard this particular argument before about the motion to reopen because, you know, generally you have to bring it within 90 days and timely. And so. Correct. I think the cases cited don't address this circumstance where the specific issue is not raised. And so it doesn't often come up because the issue that was raised below is what is appealed to this court. So I think it is unique circumstances. But I think the three cases I cite all deal with this issue where the specific issue is not raised. And they all find that when that occurs, a motion to reopen is what's necessary in order to fully exhaust administrative remedies. Unless the. Unless that raising it at that time is excused for failure to exhaust or some other thing. But. I'd be interested to hear what your friend on the other side has to say about that. Thank you, Your Honor. Thank you, Your Honors. As they did in the answering brief and as we discussed in our reply brief, the government is trying to import issue exhaustion into a statute that requires remedy exhaustion. And Carr v. Saul was decided five days before Palomar Santiago and was unanimous that remedy exhaustion. You know, I can't hear you and you're talking too fast. I can't process what you're saying anyway. Slow down and a little louder. Yes, Your Honor. In Carr v. Saul, five days before Palomar Santiago, the United States Supreme Court clarified that remedy exhaustion is not the same as issue exhaustion. And that case was about Social Security, not immigration. But exhaustion of remedies is what's required by D1. That is not the same thing as issue exhaustion. The cases other than Hinojosa-Perez, the cases that my colleague cited are not 1326 cases, so they're not about the right kind of exhaustion. As we addressed in our reply, Hinojosa-Perez is a 2000 decision of this court that is distinguishable on its facts and has been distinguished on its facts previously. No circuit that I'm aware of requires both a motion to reopen and a BIA appeal for D1 exhaustion under Section 1326, including this court. I would also note that there are immigration cases that say that you don't even need to file a motion to reopen for immigration exhaustion because they're discretionary with the BIA. A BIA can deny a motion to reopen even if a claim has been made in their discretion. That makes it not a remedy for a due process violation of the Fifth Amendment as required by Mendoza-Lopez, which is how we got here to begin with. There has to be a remedy, namely judicial review of any alleged due process error in the underlying removal order before it can be used as an element of a criminal conviction, such as in this case. This case will not grant my client voluntary departure or any kind of immigration status. It only says that an improper due process violative removal order cannot be used to satisfy an element of a criminal prosecution, such as this case. As to D2, to go back to Judge Brown's question, both Gonzalez-Villalobos in footnote 9 and also Lopez-Chavez at page, I think it's 1044, say that clear and effective assistance of counsel shows deprivation of judicial review. It's not that it excuses it, it shows it, and that's for the reasons we discussed when I was up here before. The ineffective assistance shields itself from judicial review at every level until you get to 1326 and you have a defense lawyer who raises it. At least that's how it worked in this case. And so for the reasons that we've argued, we believe we have satisfied D1, D2, D3, and have shown prejudice. We would ask the court to reverse and remand with instructions to dismiss the indictment. Thank you very much, counsel. Thank you, Your Honor. Okay. United States v. Zuniga is submitted. And the remaining two cases, Lewis v. Jefferson-La Brea, D&J Properties, and Arizmendi v. Bondi are submitted on the briefs. And the session of the court is adjourned for today. Thank you very much. All rise. This court for this session stands adjourned.
judges: WARDLAW, ALBA, Brown